**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph TRINGALI and Ramon Hernandez, a/k/a Alfredo, Defendants–Appellants.**

Nos. 94–2681, 94–3760.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1995.

Decided Dec. 18, 1995.

---

Barry Rand Elden, Chief of Appeals, Haywood McDuffie (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for U.S.

H. Elizabeth Kelley (argued), Oak Forest, IL, for Joseph Tringali.

Michael G. Logan (argued), Chicago, IL, for Ramon Hernandez aka Alfredo.

Before CUMMINGS, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

A federal grand jury indicted Joseph Tringali and Ramon Hernandez (a/k/a "Alfredo") for conspiring to possess with intent to distribute ten kilograms of cocaine and possession with intent to distribute two kilograms of cocaine. Tringali pleaded guilty to the possession count and was sentenced to 140 months imprisonment and five years of supervised release. Hernandez pleaded not guilty, but following a jury trial he was convicted on both counts and sentenced to a mandatory minimum of twenty years imprisonment. Tringali appeals his sentence and Hernandez appeals his conviction and sentence. We affirm.

## I. Background

In December of 1993, "Mr. Alex,"[1] a native of Colombia, called the Drug Enforcement Agency ("DEA") office in Chicago to express his support for the DEA's anti-drug operations in Colombia, especially its role in the recent capture and death of Pablo Escobar, a notorious Colombian drug kingpin. The DEA saw an opportunity to infiltrate drug traffickers and recruited Alex to work as a cooperating individual.

In accordance with his agreement to provide the DEA with information, Alex named three people he suspected of trafficking in narcotics, Fernando Trujillo, Joseph Tringali and Ramon Hernandez. Alex had originally met Trujillo in 1991. During 1991 and 1992 Alex attended several parties with Trujillo, where he met Joseph Tringali and Ramon Hernandez. At one such party, Alex witnessed an argument between Trujillo and two other people regarding a drug debt. After witnessing this argument, Alex's contact with Trujillo waned.

---

1. For the security of the cooperating individual and his family, the government obtained a protective order that precluded the disclosure of Alex's full name or other identifying information.

Upon becoming a cooperating individual with the DEA, Alex sought to reestablish his connection with Trujillo. In late December of 1993, Alex attempted to contact Trujillo by using the pager number Trujillo had given him in 1991. Alex's attempts to locate Trujillo were unsuccessful, so he called a mutual acquaintance for suggestions and was informed that Trujillo was in jail, but that "Alfredo" might be able to help him. Alex eventually contacted "Alfredo." Alex testified that he remembered "Alfredo" to be the man named Ramon Hernandez whom he had met earlier through Trujillo.

When Alex contacted Hernandez, he told Hernandez that some foreign friends in Chicago were interested in purchasing cocaine. Hernandez indicated that he would look into the possibility of supplying cocaine. Approximately one week later, Hernandez informed Alex that he had conferred with his suppliers and, that if the deal could be done in California, the price per kilogram of cocaine would be $15,000—$16,000, but, that if done in Chicago, the price would jump to $22,000—$23,000 per kilogram.

Over the next month, Alex and Hernandez negotiated the details of the drug deal. They agreed on an amount of ten kilograms, with delivery to take place in Chicago. They also agreed that Joe Tringali would deliver the drugs to Alex. But Hernandez later restructured the sale, stating that Tringali would start with a delivery of two kilograms of cocaine and if the transaction was successful, the remaining eight kilograms would follow. A few days after that conversation, Hernandez told Alex that Tringali was in Chicago "ready to make the cocaine business." Tringali also called Alex, stating that he was in Des Plaines, Illinois with the cocaine. During his conversation with Tringali, Alex expressed disappointment that he would not receive the entire ten kilograms of cocaine at one time. Tringali responded that they would complete the two kilogram transaction and that Alex would get the eight additional kilograms of cocaine "very soon."

The next day Tringali and Alex met in a parking lot to discuss the logistics of the cocaine transaction, and then proceeded to a motel, where Tringali opened a suitcase and showed Alex two kilograms of cocaine. Alex left the motel ostensibly to retrieve the "buy money" for the cocaine. The DEA then arrested Tringali in the motel room. During the arrest, DEA agents found in Tringali's room a business card with Hernandez's beeper number. Further investigation revealed that Tringali had placed two calls from the Des Plaines motel room to a house located at 545 11th Street, Imperial Beach, California. Hernandez was later arrested fleeing from this Imperial Beach home.

Based on these facts, a federal grand jury returned a two-count indictment charging Tringali and Alfredo (later identified as Hernandez) with conspiracy to possess with intent to distribute ten kilograms of cocaine in violation of 21 U.S.C. § 846, and possession with intent to distribute two kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). Under a plea agreement, the government dropped the conspiracy count, and Tringali pleaded guilty to the possession count. Tringali was sentenced to 140 months in prison and five years supervised release. Tringali appeals his sentence.

Hernandez pleaded not guilty. Following a three-day jury trial, he was convicted on both counts and sentenced to a statutory mandatory minimum of twenty years in prison and five years of supervised release. Hernandez appeals his conviction and sentence.

## II. Analysis

On appeal, Hernandez asserts that the district court erred in admitting evidence of his 1984 conviction for conspiring to possess cocaine. In addition he claims error for the court's refusal to give a "mere presence" jury instruction. Hernandez also appeals his sentence, claiming first that the district court erred in determining that the conspiracy involved ten kilograms of cocaine, and second, that he was not subject to a 20–year mandatory minimum because the government failed to give him proper notice that it would seek such a sentencing enhancement based on his 1984 conviction for cocaine trafficking.

Tringali joins one aspect of the appeal, claiming the district court erred in sentenc-

ing him based on its finding that the conspiracy involved ten kilograms of cocaine. Given the limited nature of Tringali's appeal, we address his contentions within our discussion of the broader questions presented by Hernandez.

### A. 404(b) Evidence

At the close of Hernandez's trial, the district court took judicial notice and presented to the jury the fact that in 1984 Hernandez was convicted in the Western District of New York of conspiracy to possess with intent to distribute four kilograms of cocaine. On appeal, Hernandez claims this evidence constituted inadmissible character evidence improperly admitted under 404(b). Rule 404(b) of the Federal Rules of Evidence provides that:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ The district court found the evidence of Hernandez's 1984 conviction admissible under Rule 404(b) because it showed knowledge and intent, and the court admonished the jury to consider the testimony for that purpose only. We review the district court's decision for an abuse of discretion. *United States v. Lampkins,* 47 F.3d 175, 179 (7th Cir.1995).

■ In determining whether the district court abused its discretion in admitting the above evidence, this court considers whether:

(1) the evidence is directed toward establishing a matter in issue other than the defendants' propensity to commit the crime charged;

(2) the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue;

(3) there is sufficient evidence to support a finding by the jury that the defendants committed the similar act; and

(4) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

*Id.*

■ In view of these four factors, the district court did not abuse its discretion by taking judicial notice of Hernandez's 1984 conviction. First, the evidence was directed toward Hernandez's knowledge and intent, and not to show his propensity to commit the crime charged. *See United States v. Briscoe,* 896 F.2d 1476, 1498–99 (7th Cir.1990) (holding that evidence of prior drug transactions by defendants in narcotics cases is admissible to show knowledge and intent under Rule 404(b)). Part of Hernandez's defense was that he could not put a large drug deal together. The prior four-kilo transaction showed he had the knowledge and intent to do so. Second, the 1984 conviction was similar in time and manner to the issue presented in this case; both related to cocaine trafficking and both occurred within ten years. *See, e.g., United States v. Mounts,* 35 F.3d 1208, 1214–15 (7th Cir.1994) (attempted purchase of small amount of cocaine seven years before conspiracy was sufficiently similar and immediate under 404(b)). In fact, the 1984 conviction involved a conspiracy by the key players in this case: Tringali, Hernandez and Trujillo. The evidence also satisfied the third factor, since Hernandez was actually convicted of the proffered similar act. And finally, given the limiting jury instruction the district court did not abuse its discretion in finding that the probative value of the evidence in proving knowledge and intent was not outweighed by the danger of unfair prejudice. *Lampkins,* 47 F.3d at 180 (court did not abuse discretion in concluding that probative value of the evidence was not outweighed by prejudice where court gave a careful limiting instruction). Therefore the district court properly admitted evidence of Hernandez's 1984 cocaine conspiracy conviction.

### B. Jury Instruction

Hernandez next asserts that he was denied a fair trial because the district court refused to give the jury a "mere presence" instruction. On appeal Hernandez claims that he

was entitled to the "mere presence" instruction because he was "merely present" at the Imperial Beach home which Tringali called while he was in Illinois delivering the drugs to Alex.

■ Hernandez's attorney did submit a "mere presence" instruction and briefly discussed the evidence he claimed would merit giving it to the jury. But merely submitting an instruction is not enough. *United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir. 1987). "A defendant must object, on the record, to the judge's refusal to tender the defendant's instructions, and must clearly state the reasons for his or her objections." *Id.* He did not object to the judge's refusal (and obviously gave no reasons). We therefore review the refusal for plain error. "Plain error must be of such a great magnitude that it probably changed the outcome of the trial." *Id.*

> [A] defendant is entitled to an instruction on his or her theory of defense if: (1) the defendant proposed a correct statement of the law; (2) the defendant's theory is supported by the evidence; (3) the defendant's theory of defense is not part of the charge; and (4) the failure to include an instruction on the defendant's theory of defense in the jury charge would deny the defendant a fair trial.

*Id.* at 1320–21.

■ After reviewing the record, we conclude that Hernandez has failed to meet the second and fourth prongs of this test. As the district court noted in denying Hernandez's request for the "mere presence" instruction, the defendant had produced no evidence supporting the theory that he was merely present in this house when Tringali called. In fact, this argument was never made during the examination of the witnesses. Where a defendant fails to present a theory of defense during trial, it is not error to refuse an instruction based on "an eleventh-hour idea that materialized at the instruction conference." *United States v. Baker*, 40 F.3d 154, 162 (7th Cir.1994).[2]

Furthermore, it cannot be said that the failure to include a "mere presence" instruction denied Hernandez a fair trial because the court's instructions already adequately informed the jury that presence alone was insufficient to convict. The court stated that to be found guilty of conspiracy Hernandez had to "knowingly and intentionally bec[o]me a member of the conspiracy." The court also instructed the jury that "the government must prove beyond a reasonable doubt, from the defendant's own acts and statements, that the defendant was aware of the common purpose and was a willing participant," and "that a person must knowingly associate himself with the criminal venture, participate in it, and try to make it succeed." Additionally, the court instructed the jury that Hernandez's "theory of the case was that he was not a knowing member of the conspiracy . . . and did not willingly participate in the conspiracy." Read as a whole, as we are required to do, the instructions adequately informed the jury that it could not convict Hernandez merely because he was present at the Imperial Beach home. Therefore, we find no plain error in refusing the instruction. *United States v. Requarth*, 847 F.2d 1249, 1254 (7th Cir.1988) ("If the essential elements of the allegedly erroneously omitted instruction were adequately covered by the court's other instructions, the omission will not constitute plain error."); *United States v. Kehm*, 799 F.2d 354, 363 (7th Cir.1986) (no plain error where "mere presence" instruction was refused in conspiracy case but adequately covered by remaining instructions).

## C. Sentencing

Hernandez also appeals his sentence claiming that the district court erred in determining that the conspiracy involved ten kilograms of cocaine and in enhancing his sentence to the mandatory twenty-year minimum required by 21 U.S.C. § 851. Tringali joins in Hernandez's challenge to the district court's calculation of the quantity of drugs involved in the conspiracy.

---

2. Moreover, the evidence established a relationship between Tringali and Hernandez which extended far beyond Hernandez's presence at the Imperial Beach home. For example, Alex testi-

fied that Hernandez had agreed to the ten-kilogram drug deal and had sent Tringali to Chicago to deliver the drugs.

### 1. Quantity of drugs.

The district court concluded that Hernandez and Tringali's conspiracy in this case involved ten kilograms of cocaine. The district court's determination of the quantity of drugs involved in an offense is a factual finding which must be supported by a preponderance of the evidence. *United States v. Crawford,* 991 F.2d 1328, 1330 (7th Cir. 1993). This court must uphold such findings unless they are clearly erroneous. *United States v. Buggs,* 904 F.2d 1070, 1078 (7th Cir.1990).

Hernandez attacks the district court's finding by first arguing that he had only agreed to two kilograms and that Tringali had expanded the agreement on his own to ten kilograms. Even were that a plausible explanation, the evidence also supported the district court's conclusion that both defendants had agreed to a ten kilogram drug deal. Specifically, Alex testified that Hernandez had agreed to a ten kilogram deal. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

Both defendants also assert that they should not be responsible for ten kilograms of cocaine because the evidence was insufficient to support the conclusion that they were capable of producing the entire ten kilograms of cocaine. In support of their position, defendants rely on 2D1.4 of the Sentencing Guidelines which provides that:

> Where the court finds that the Defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the Defendant did not intend to produce and was not reasonably capable of producing.

Here, the defendants argue that they lacked both the intent and the capability of producing the drugs. The evidence presented, however, established that over a period of months, the cooperating individual negotiated with Hernandez and Tringali to purchase ten kilograms of cocaine and that the final agreement provided for delivery in two tiers, with two kilograms delivered first, followed by the remaining eight kilograms. This supports the district court's conclusion that the defendants intended to provide ten kilograms of cocaine. The evidence also supports the district court's conclusion that the defendants were capable of producing the entire ten kilograms of cocaine. Specifically, on January 29, 1994, Alex spoke with Hernandez to discuss definite plans to purchase ten kilograms of cocaine. Hernandez informed Alex that the cocaine would be delivered in Chicago, but that they would bifurcate the delivery to minimize the risk of losing the cocaine. Later, in Chicago, Tringali told Alex that he would provide the additional eight kilograms of cocaine by the following weekend. Moreover, the evidence established that Hernandez had confided to Alex that he had lost $120,000 worth of cocaine when Trujillo was arrested and that he had been taking $10,000—$20,000 from each deal to repay his suppliers. Based on the market value of cocaine in California, the $120,000 loss supports the conclusion that the defendants were capable of producing ten kilograms of cocaine. Given this evidence, coupled with the defendants' continuous representations that the drug deal would be for a total of ten kilograms, the district court was not clearly erroneous in finding that a preponderance of the evidence supported the conclusion that the conspiracy involved ten kilograms of cocaine.

### 2. 21 U.S.C. § 851.

At the time of Hernandez's conviction, 21 U.S.C. § 841(b)–(1)(A) and 846 provided that a defendant convicted of conspiring to distribute more than five kilograms of cocaine, who had a prior conviction for a felony drug offense, was subject to a twenty-year mandatory minimum sentence. If the government intended to seek an enhancement based on a prior felony drug conviction under section 841, section 851 required the government to provide the defendant with notice prior to trial that it would be seeking such an enhancement. 21 U.S.C. § 851(a)(1); *Kelly v.*

*United States,* 29 F.3d 1107, 1109–1110 (7th Cir.1994).

In this case, prior to trial the government sent Hernandez a copy of its filing with the district court seeking an enhanced statutory sentence based on Hernandez's 1984 federal cocaine conviction. The filing, however, inadvertently stated that it was to give "notice to defendant Javier Dias–Vargas of the government's intention to seek enhanced penalties pursuant to statute in the event that Alfredo Lnu, also known as 'Ramon Hernandez' is convicted in this case." Hernandez argues that since the filing stated that it was to provide another individual with notice, it was inadequate notice. We disagree.

■ Section 851 does not specify the particular form notice of an enhancement must take. *United States v. Belanger,* 970 F.2d 416, 419 (7th Cir.1992). Rather, notice will suffice under section 851 if the defendant receives reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence. *Id.*

■ In this case, while the filing improperly stated that it was to provide Dias–Vargas notice, the filing was actually sent to and received by Hernandez. Moreover, the filing correctly stated the government's intent "to seek enhanced penalties pursuant to statute in the event that Alfredo Lnu, also known as 'Ramon Hernandez' is convicted in this case." Thus, Hernandez received *actual* notice of the government's intent to seek enhanced penalties against him. That is more than sufficient for purposes of section 851. Moreover, in this case, the government also filed notice of its intent to introduce the same 1984 conviction at trial to prove defendant's knowledge and intent regarding the charged crime, pursuant to Rule 404(b). Even if the section 851 notice was defective, when read in conjunction with the government's Rule 404(b) notice, Hernandez received sufficient notice under section 851. *Belanger,* 970 F.2d

at 418–19 (holding that even if section 851 notice was deficient in text, when taken together with the Rule 404(b) notice, the enhancement notice was sufficient to alert the defendant to the government's intent to seek an enhanced sentence).[3]

### III.  Conclusion

The district court did not err by admitting evidence of Hernandez's 1984 conspiracy conviction as 404(b) evidence of knowledge and intent. The district court also did not err in refusing Hernandez's "mere presence" instruction. We therefore AFFIRM Hernandez's conviction. We also AFFIRM Hernandez's twenty-year mandatory minimum sentence because the government provided Hernandez sufficient notice and because the district court did not err in concluding that the conspiracy involved ten kilograms of cocaine. For the same reason, we also AFFIRM Tringali's sentence. For these and the foregoing reasons, we

AFFIRM.

---

**3.** Before applying the twenty-year mandatory minimum to Hernandez, the district court calculated Hernandez's offense level under the Sentencing Guidelines. In doing so, the district court included a two-level enhancement for being an "organizer or manager" pursuant to 3B1.1(c) of the Sentencing Guidelines. On appeal, Hernandez claims that the district court erred in enhancing his sentence two levels for being an "organizer or manager." Because the district court properly sentenced Hernandez under the statutory mandatory minimum, we need not reach Hernandez's challenge to the district court's application of the Sentencing Guidelines.