**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2885

_____

UNITED STATES OF AMERICA

v.

LAWRENCE YOUNG,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-09-cr-00152-001)
District Judge: Honorable J. Curtis Joyner

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 20, 2012

Before:   VANASKIE, BARRY AND CUDAHY,[*] *Circuit Judges*

(Opinion Filed:  May 31, 2012)

_____

OPINION OF THE COURT

_____

VANASKIE, *Circuit Judge.*

Lawrence Young, a pharmacist, was charged with one count of conspiracy to

unlawfully distribute controlled substances, in violation of 21 U.S.C. § 846, and three

---

[*] Honorable Richard D. Cudahy, United States Court of Appeals for the Seventh
Circuit, sitting by designation.

counts of unlawful distribution of oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) . A jury found Young guilty on all charges. Young appealed, asserting that there was insufficient evidence to prove his involvement in a conspiracy, that the jury instructions on conspiracy were flawed, that jury selection was unconstitutional because the trial judge left the bench when peremptory challenges were being exercised, and that his trial counsel was ineffective. We reject on the merits his first three arguments and find that his motion for a new trial based upon ineffective assistance of counsel was filed too late in the District Court. Accordingly, we will affirm the District Court's judgment.

## I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

Young owned and operated Young's Pharmacy in Philadelphia since 1963. The government alleges that from at least 2001 until he sold the store in 2006, Young worked with his employees and drug dealers to fill thousands of fraudulent prescriptions. Specifically, the government contends that there were approximately ten regular customers who would routinely make large purchases of controlled substances in cash, filling multiple prescriptions in different names all drafted by the same "pill mill" doctors. These customers would hand out cash tips and purchase lunch for pharmacy employees, including Young. Because of this practice, Young's Pharmacy greatly outsold significantly larger national chain pharmacies in the local area in commonly abused substances, such as oxycodone.

Young vigorously disputed the government's version of events, blaming his employees for all of the criminal activity that occurred at the pharmacy. A jury rejected Young's defense, finding him guilty on all charges. Following denial of an untimely post-trial motion, Young was sentenced to a term of 120 months of imprisonment, followed by three years of supervised release. Young now appeals.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

## A.

Young first argues that there was insufficient evidence to prove his involvement in the alleged conspiracy, asserting that the government failed to prove that he knew he was providing drugs for distribution beyond those individuals who had presented him with prescriptions. Young notes that the mere sale of drugs "does not create a conspiracy between a buyer and a seller unless the seller understood that the buyer intended to resell the drugs to others." (Appellant's Br. at 24.) (citing *United States v. Roe*, 210 F.3d 741, 747 (7th Cir. 2000)).

"To make out a conspiracy charge, the Government must show: (1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Pressler*, 256 F.3d 144, 147 (3d Cir. 2001). "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence," because "'[i]t is not for us to weigh the evidence or to determine the credibility of the witnesses.'" *United*

3

*States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (quoting *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996)). We "will sustain the verdict if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Voigt*, 89 F.3d at 1080). "Thus, 'a claim of insufficiency of the evidence places a very heavy burden on an appellant.'" *Id.* (quoting *United States v. Gonzalez*, 918 F.3d 1129, 1132 (3d Cir. 1990)).

Young fails to meet this burden. Multiple employees and "street pharmacists" testified against Young, noting that he did not question his regular customers despite the fact they presented multiple prescriptions written by the same doctors for large quantities of controlled narcotics several times a week. There also were taped conversations between Young and one of his regular customers discussing the supply of controlled narcotics, and how Young would work with this customer to fill his fraudulent prescriptions. Viewing this evidence in the light most favorable to the government, we conclude that it was more than sufficient to permit a reasonable jury to find that Young was part of a conspiracy to unlawfully distribute controlled substances.

B.

Young next argues that the District Court never explained to the jury that in order to find him guilty of conspiracy, the government had "to prove that Mr. Young had an agreement with, and therefore knew about, an illegal distribution of the drugs *beyond the simple act of an individual purchasing drugs* and that he intended to further that goal." (Appellant's Br. at 30.)

4

Young failed to object to the jury instructions at trial. "[B]efore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 467 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). The burden is on Young to establish that the jury instructions were plainly erroneous.

Young fails to meet this burden. The District Court first explained in its instructions to the jury that, "[t]he government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy to commit the offense of unlawful distribution of controlled substances." (S.A. at 222.) The District Court then specifically clarified to the jury that:

> [U]nder the law a pharmacist may legally distribute a controlled substance if there is a valid prescription for the controlled substance. A valid prescription is one that is issued for a legitimate medical purpose. The law also places a duty on a pharmacist to be vigilant in filling prescriptions, and to avoid filling those that were written for a non-medical purpose.
>
> If you find that the defendant knew that the prescriptions he filled or helped fill were not written for a legitimate medical purpose or [were] fraudulent, then he has illegally distributed a controlled substance.

5

(S.A. at 224.)

These instructions, considered in their entirety, adequately communicated to the jurors that in order to convict Young of conspiracy, they had to find that Young possessed both knowledge and intent to illegally distribute controlled substances. The District Court's instruction distinguishing between valid and invalid prescriptions made it clear that a conviction here required more than the sale of a controlled substance.

Even if the District Court had delivered the jury instructions less than perfectly, plain error challenges to jury instructions are found "'sparingly and only where the error was sure to have had unfair prejudicial impact on the jury's deliberations.'" *United States v. Thayer*, 201 F.3d 214, 222 (3d Cir. 1999) (quoting *United States v. Zehrbach*, 47 F.3d 1252, 1263 n.9 (3d Cir. 1995)). The record before us does not warrant such a conclusion. "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Such a case is not before us.

### C.

Young also contends that he was deprived of his constitutional right to have an Article III judge preside during jury empaneling, because the District Judge returned to chambers after receiving consent to do so from both sets of counsel at the conclusion of the *voir dire*. Young further argues that even if this practice were constitutional, he personally did not consent to the judge's absence, and thus "did not knowingly and intelligently waive his right to the presence of an Article III judge at jury selection." (Appellant's Br. at 39.)

6

The fact that Young himself personally did not waive his right to the judge's presence is of no consequence, because his counsel's consent was sufficient.  In *Gonzalez v. United States*, 553 U.S. 242 (2008), the Supreme Court noted that "some basic trial choices are so important that an attorney must seek the client's consent in order to waive the right." *Id.* at 250 (citing *Florida v. Nixon*, 543 U.S. 175, 187 (2004)).  These decisions include "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (citations omitted).  Deciding whether to consent to the trial judge leaving the bench after *voir dire* questioning does not qualify as one of these important choices.  Notably, the Supreme Court held in *Gonzalez* that "express consent by counsel suffices to permit a magistrate judge to preside over jury selection in a felony trial," reasoning that "[a]lthough a criminal defendant may demand that an Article III judge preside over the selection of a jury, the choice to do so reflects considerations more significant to the realm of the attorney than the accused." 553 U.S. at 250, 253.  This analysis is equally applicable to the facts before us.

Young, having failed to raise this constitutional issue at trial, must establish that the judge's absence when peremptory strikes of jurors were being made was plain error that "'affected [his] substantial rights,'" and that "'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Notably, no issues were raised concerning the exercise of peremptory strikes of jurors, and both lawyers answered in the affirmative when the District Judge returned to the courtroom and asked if they approved of the empaneled jury. Young makes no showing that there is "a reasonable probability" that the District Judge's brief absence "affected the outcome of the trial." *Marcus*, 130 S. Ct. at 2164 (citing *Olano*, 507 U.S. at 734-35). Accordingly, Young's claim that jury selection was fatally flawed because he was deprived of his constitutional right to the presence of an Article III judge fails.[1]

## D.

Young last argues that his trial counsel was ineffective. We reject this claim without reaching the merits because Young's motion for a new trial based on ineffective assistance of counsel was untimely.

Federal Rule of Criminal Procedure 33(b)(2) states that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." The verdict was entered on December 4, 2009, but Young's motion was not filed until October 20, 2010. Young does not point to any newly discovered evidence that would have justified the untimely filing of his

---

[1] We do not endorse the practice of district judges leaving the bench during the peremptory strike phase of jury selection. On the contrary, as we stated over 45 years ago in a case with remarkably similar facts, we believe the better practice is for the district judge to remain on the bench throughout the entire jury selection process, even if the parties consent to the absence. *Stirone v. United States*, 341 F.2d 253, 256 (3d Cir. 1965) ("In fairness to the trial judges of this circuit, hereafter in criminal cases, irrespective of suggestion of waiver by the parties, trial judges will not leave the bench during any part of the voir dire or other jury selection process without recessing the court."). We reaffirm that admonition today. Nevertheless, under the circumstances of this case, the District Judge's decision to leave the bench with the consent of counsel did not create such a structural defect in the proceedings as to warrant a new trial.

motion. Young merely asserts that because the District Court addressed the merits of his ineffective assistance claims, so should we. The District Court, however, explicitly stated that Young's new trial motion "must be denied initially for failure to file the motion within fourteen (14) days after verdict." (A. 3 n.1.) Although the time limit in FED. R. CRIM. P. 33(b)(2) is not jurisdictional, *see Eberhart v. United States*, 546 U.S. 12, 19 (2005), it is a claims processing rule entitled to enforcement when properly raised by the government. *See United States v. Singletary*, 471 F.3d 193, 194 (D.C. Cir. 2006). Indeed, in *Eberthart*, the Court declared that "when the Government objected to a filing untimely under [a claims processing rule], the court's duty to dismiss . . . was mandatory." 546 U.S. at 18. In this case, the government did object in the District Court to the timeliness of Young's motion for a new trial. Accordingly, denial of the motion as untimely was warranted, and there is no reason to address the substance of Young's ineffective assistance claims.

## III.

For the foregoing reasons, we will affirm the District Court's judgment.

9