**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jack W. BAUM, Defendant-Appellant.**

**No. 17690.**

United States Court of Appeals,
Seventh Circuit.

Dec. 28, 1970.

Rehearing Denied Jan. 19, 1971.

Joseph A. Lamendella, David P. Schippers, Chicago, Ill., for defendant-appellant; Schippers, Betar, Lamendella & O'Brien, Chicago, Ill., of counsel.

William J. Bauer, U. S. Atty., Allan E. Lapidus, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys.,

of counsel, assisted by Arnold Kanter, Legal Intern.

Before CASTLE, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant was charged in three counts of a 6-count indictment alleging violations of the Internal Revenue and Criminal Codes. A jury found him guilty under Counts I and III, and he received concurrent sentences of three years' imprisonment.

The first count charged that defendant, Guy F. Parker, and Samuel A. Carmel conspired to attempt to evade the federal income taxes of Mr. and Mrs. Charles A. Hansen for 1956 through 1960. As part of the conspiracy, the grand jury alleged that defendant prepared fraudulent income tax returns for the Hansens in those five years. This count asserted that the conspirators violated the general conspiracy statute (18 U.S.C. § 371) by combining to attempt to evade the taxes of the Hansens, as proscribed by 26 U.S.C. § 7201.

Count III charged that about August 4, 1961, defendant procured a revenue agent's report which fraudulently stated that income had been omitted from the 1958, 1959, and 1960 tax returns of Mr. and Mrs. Hansen "because of litigation due to injury or death of employees on the [contract] jobs from which the income was received" in violation of 26 U. S.C. § 7206(2).[1]

Prior to trial, the district court ordered the Government to produce a copy of the revenue agent's report and related working papers for the years 1956 through 1960 and the federal income tax returns of the Hansens for those years. The Government was also required to disclose their corrected taxable income and corrected tax liability. Pursuant to a subsequent pretrial order of the dis-

---

1. Defendant was acquitted under Count II, which charged that he and Samuel Carmel endeavored to give $3,000 to Revenue Agent Guy F. Parker to conceal fraudulent omissions of income from the 1958, 1959, and 1960 federal income tax returns of Mr. and Mrs. Hansen.

trict court, the Government also disclosed all of Hansen's books and records in its possession.

The evidence shows that defendant was an attorney primarily engaged in the preparation of federal income tax returns. One of his clients was a mason contractor named Charles Hansen, and defendant prepared Mr. and Mrs. Hansens' federal income tax returns for the years in question.

In the summer of 1961, almost daily until some time in August, Internal Revenue Agent Guy F. Parker was auditing income tax returns of the Hansens in defendant's office. At that time, defendant told William M. Stromburg, an office associate, that Parker was going to retire and that defendant was going to give him a going-away present. In early 1963, Stromburg read Parker's September 21, 1961, report of his examination of the Hansens' income tax liability, which stated that "receipts were erroneously omitted because of litigation on [contract] jobs on which the amounts were received" during the calendar years 1958, 1959, and 1960. Defendant laughed when Stromburg remarked that the reason for the omission of that income was a lot of nonsense. When Stromburg asked defendant how he was planning to skirt the fraud penalty, defendant said, "[t]hat is none of your business and keep your mouth shut about it." At a 1963 meeting attended by Stromburg, defendant, and Hansen concerning further Hansen tax difficulties, Hansen remarked, "I don't want any bribing in this one," and defendant replied that Stromburg would not "know how to do these things anyway."

Stromburg testified that he received Hansen's income tax records in 1965 because he was then in charge of preparing the Hansens' income tax returns. Stromburg noticed that a working paper was missing covering the years 1958 through 1960. He stated that as to each of those years, it had a figure, and the total of the three figures was about $21,000. Underneath the total a penalty

was shown for more than $10,000. These two figures were then totaled to show $32,000. Parker's report showed that the amount of income that the Hansens omitted for those three years was $34,824.80 and that their unreported income tax liability was about $20,000. Parker did not assert any fraud penalties. If Parker's report had not been distorted, the Hansens' total tax and fraud penalty liability would have been about $33,000, approximately resembling the total amount shown in the working paper.

Victor Berke, also a business associate of defendant, testified that he saw defendant hand Parker a white envelope in the summer of 1961. Defendant then told Berke that he just got through paying for settling his contractor client's case and had fixed it so that it would not go any further, with Hansen off the hook. In that same summer, defendant and his business associate, Samuel Carmel, met with Hansen, who expressed his concern with respect to the audit of his income tax returns. Defendant informed Carmel about the omissions of Hansen's income and told Hansen not to worry because defendant would do anything to make sure that Hansen had no problems. A few days later, defendant remarked to Carmel that Agent Parker would be almost blind not to find the omissions while going through Hansen's tax returns. Subsequently, defendant told Carmel that Parker had found various omissions in the returns, and defendant asked Carmel to "attempt to reach" Parker.

On August 3, 1961, Carmel was in defendant's office when Hansen gave defendant $3,000 in large denominations after cashing a check at the Belmont National Bank. Defendant returned the money to Hansen when Hansen admitted that his bookkeeper would see the check. The money was redeposited on August 4, and Hansen then gave defendant a package containing $3,000 in smaller bills. Defendant said that Carmel and he would then take care of the matter, but Carmel refused to participate, even

though Hansen offered him "a couple of hundred."

The next day, defendant told Carmel that Parker could use a loan of $2,000 or $3,000, and Carmel agreed to make such a loan. Later in the day, Carmel told defendant to handle the matter instead. A few days later, the defendant told Carmel that he had paid Parker with cash, the Hansen audit cost an additional $21,000 in taxes, defendant had saved Hansen $7,000 to $8,000 in additional taxes, and that no penalty for civil or fraud charges would be brought against Hansen. A few years later, defendant told Carmel to forget what he knew about this matter.

In a September 21, 1961, transmittal letter to one of his superiors, Parker reported that $34,824.80 unreported income of the Hansens was the result of [contract] jobs not included in the 1958–1960 returns, although most of the prices for the work had been received by the taxpayers. Parker then reported:

> "Mr. Hansen stated that the jobs were omitted from the returns because of litigation in each instance involving death or injury to one of his employees; that he believed, and Lou Strobl, his part time bookkeeper and Jack W. Baum his attorney and preparer of the returns, agreed with him, that no income should be reported nor costs claimed on those jobs until they were fully settled."

Parker added that such jobs were included in the corrected figures in his report but that no penalty was being asserted "because it was considered that the omission of the jobs in litigation was honest error and not negligence nor wilful disregard of code and regulations." One of Parker's penciled worksheets attached to the transmittal letter was entitled "Cash Receipts (Per Ck. Stubs)" for November 5, 1958, until October 15, 1959. Underneath the Comment column, at the bottom of the right-hand side of this page, Parker penciled "(Per Baum's W.S. [Worksheet])."

It was stipulated that there was no litigation against Hansen for employee injury or death, even though both Parker's transmittal letter and report stated that Hansen had omitted income for this reason. This subject had been discussed by defendant, Hansen and Parker, as shown by both those documents. Although it was improper practice for a revenue agent to accept such an omission explanation without verification, no verification had been obtained by Parker. Hansen's books never contained an account relating to jobs on which employees were injured or killed, nor did he ever make a payment for such an injury. Furthermore, he had Workmen's Compensation and general liability insurance for the relevant years.

## I

Defendant asserts that the conspiracy count, stated in Count I of the indictment, should have been dismissed because it related to the taxable years 1956 through 1960, whereas the indictment was not returned until August 1, 1967, after the deaths of coconspirator Charles A. Hansen and his wife, Theresa.

Defendant first argues that the six-year statute of limitations applicable to Count I under 26 U.S.C. § 6531(8) should have barred prosecution of that portion of the indictment. He urges that the conspiracy was completed no later than April 15, 1961, the due date for filing the 1960 income tax returns. See United States v. Habig, 390 U.S. 222, 88 S.Ct. 926, 19 L.Ed.2d 1055. Since the indictment was not returned until August 1, 1967, more than six years after the due date for the final return, the limitations period would have elapsed.

We reject this argument. The conspiracy charged in Count I was not confined to the submission of fraudulent returns covering the years in question. It included the avoidance of fraud and penalty assessments which might arise as a result of subsequent government investigation. The conspiracy included Agent Parker, the internal revenue agent in-

vestigating these returns, and the Government charged overt acts on the part of the conspirators culminating September 29, 1961, directed toward securing acceptance of the fraudulent returns. Consequently the indictment was returned within the statutory period of limitations. See Grunewald v. United States, 353 U.S. 391, 406 et seq., 77 S.Ct. 963, 1 L.Ed.2d 931.

Alternatively, defendant suggests that the trial court erred in failing to dismiss Count I pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure because of alleged prejudicial delay in presenting the case to the Grand Jury.[2]

■■ It is true that an accused is entitled to dismissal of an indictment if he proves that he has been sufficiently prejudiced by an unnecesary and unreasonable preindictment delay. United States v. Lee, 413 F.2d 910, 912–914 (7th Cir. 1969), certiorari denied, 396 U.S. 1022, 90 S.Ct. 595, 24 L.Ed.2d 515. In this case, however, the Government did not discover defendant's "clandestine activities" until 1966. The nature of the conspiracy was, moreover, sufficiently complex as to necessitate careful investigation reasonably consuming considerable time. We are also unpersuaded by defendant's claims of prejudice. Although defendant's files relating to the Hansens' taxes were destroyed by his secretary in March 1967, after Hansen's demise, both the Government and defendant had access to Hansen's bank deposits and disbursement for the years in question. The cash receipts were reconstructed from these records. Prior to trial, the Government also produced the pertinent tax returns, Parker's report and work papers, as well as the Government's computation of the corrected tax liability. Assuming that defendant's destruction of his own work papers at that time was reasonable and justifiable, there is no indication of seri-

ous prejudice resulting to his case from that act.

## II

Defendant also charges that the evidence proving Count I was deficient because the Government failed to prove the existence of additional taxes due during the years here involved. Cf. Willingham v. United States, 289 F.2d 283 (5th Cir. 1961), certiorari denied, 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 31. We find this contention meritless.

■ The Government may prove tax evasion by showing that the accused "had income in the years in question which he, with intent to evade payment, failed to report." Kowalsky v. United States, 290 F.2d 161, 165 (5th Cir. 1961), certiorari denied, 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76. This may be shown through overstatements of expenses as well as the omission of income. United States v. Keenan, 267 F.2d 118, 123 (7th Cir. 1959), certiorari denied, 361 U.S. 863, 80 S.Ct. 121, 4 L.Ed.2d 104. The Government may employ any available method to establish those facts. United States v. Doyle, 234 F.2d 788, 793 (7th Cir. 1956), certiorari denied, 352 U.S. 893, 77 S.Ct. 132, 1 L.Ed.2d 87.

■ In the instant case, the Government proved evasion both circumstantially and through direct evidence. There was testimony from witnesses indicating that $34,000 income was omitted from the taxpayers' returns for 1958, 1959, and 1960. Defendant himself admitted the omission of Hansen income, and the evidence established that the omission was not justifiable on the grounds stated in Agent Parker's report. Moreover, there was testimony disclosing substantial overstatement of expenses. There was, therefore, ample evidence from which the jury could conclude that taxes were evaded during the years in question.

2. Rule 48(b) states that
"[i]f there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

### III

■ Defendant next charges that the evidence was insufficient to support a conviction for procuring a false report as charged in Count III of the indictment. To support his claim, defendant relies primarily on that part of Parker's transmittal letter reporting to his superior that "Mr. Hansen stated that the jobs were omitted from the returns because of litigation in each instance involving death or injury to one of his employees." Since Hansen died prior to the trial, defendant argues that the Government could not prove Parker's statement was false. However, Stromburg's testimony alone shows that this was a false statement. This was corroborated by Carmel's testimony. Finally, Parker's other report of September 21, 1961, sent to defendant and also seen by Stromburg, did not refer to any Hansen statement but merely said that "receipts were erroneously omitted because of litigation on [contract] jobs on which the amounts were received" during these three years. The evidence showed this was demonstrably false and that defendant procured the report, thus giving ample support to the conviction under Count III.

### IV

■ Numerous additional objections have been raised concerning the conduct of the trial. Initially, defendant contends that the prosecution was permitted to elicit testimony concerning defendant's character at a time when that issue was not a proper subject. We find this assertion incorrect.

On direct examination during defendant's case, Parker denied that defendant ever offered him money. The Government then cross-examined Parker about certain prior statements he made to Inspector Weber in June 1967. The defendant now asserts that a new trial should be ordered because these statements reflected on defendant's character. Although defendant's objection was summarily overruled, no answer was ever made by the witness to the question dealing with Parker's impression of Baum's character, and the matter was dropped by the Government. Under the circumstances, we see no prejudice that would warrant a new trial. Moreover, the remaining inquiry regarded the prior statements to Weber inconsistent with the witness' preceding testimony on cross-examination that he did not believe that defendant was capable of attempting bribery and had offered him no money. Cf. Benson v. United States, 402 F.2d 576, 581 (9th Cir. 1968). Therefore, the motion for mistrial made on the next trial day was properly denied.

### V

■ During the trial, the defendant twice sought continuances to consult with an expert accountant about the Government's documentary evidence. He now complains that the court's denial of those motions deprived him of the ability to prepare his defense.

The denial of a continuance rests with the sound discretion of the trial court, and it must be judged in light of the circumstances of the particular case. Ungar v. Sarafite, 376 U.S. 575, 589–590, 84 S.Ct. 841, 11 L.Ed.2d 921; United States v. Jones, 369 F.2d 217, 220 (7th Cir. 1966) certiorari denied sub nom. Watkins v. United States, 386 U.S. 944, 87 S.Ct. 976, 17 L.Ed.2d 875. The necessary books and records had been made available to defendant from May 21, 1968, until the trial was convened on January 13, 1969. The district court therefore did not act arbitrarily in refusing these requests.

### VI

Defendant has also presented numerous objections to the trial including: (1) the court's refusal to give certain instructions tendered by defendant; (2) testimony by the Government's expert witness which allegedly invaded the province of the jury, and his use of charts and captioned exhibits; (3) refusal to admit defendant's evidence of income from years subsequent to the pe-

riod of the conspiracy; (4) alleged restrictions upon defendant's cross-examination of several witnesses depriving him of the opportunity for impeachment; (5) the refusal of the court to order production of coconspirator Carmel's tax return and to recall another witness to give testimony on Carmel's character; (6) the court's refusal to send Agent Parker's federal employment record card to the jury; and (7) several incidental matters including the prosecutor's summation and questions put to defendant by the judge which, in combination with other alleged errors, purportedly deprived defendant of a fair trial.

We find these various complaints unjustified and warranting little discussion. Defendant's instructions were inapposite, and the judge properly covered the relevant matters with more general instructions which did not single out for emphasis unimportant aspects of the Government's case. Similarly, we find no defect in the testimony of the expert witness. His summaries and charts were proper, and the jury was carefully instructed regarding their proper use. The proffered evidence of subsequent tax returns was irrelevant and properly excluded by the judge in this case. Cf. Bromberg v. United States, 389 F.2d 618 (9th Cir. 1968). Our review of the transcript persuades us that defendant was not unreasonably restricted in his cross-examination of government witnesses, and we believe the judge was within his discretion in refusing to order the production of coconspirator Carmel's tax return and to recall witness Berke as the court's witness. The court's refusal to send Agent Parker's identification card to the jury was not only justifiable but hardly of any significance in determining the outcome of the trial. Finally, we do not believe that defendant was deprived of a fair trial on the basis of the errors asserted. Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593.

The conviction is affirmed.