In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2447

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

KEEFER JONES,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 CR 20029—**Michael P. McCuskey**, *Chief Judge.*

———————

ARGUED DECEMBER 1, 2005—DECIDED AUGUST 1, 2006

———————

Before EASTERBROOK, RIPPLE and KANNE, *Circuit Judges*.

RIPPLE, *Circuit Judge.*  After a jury trial, Keefer Jones was found guilty of possession with intent to distribute five or more grams of cocaine base ("crack"). *See* 21 U.S.C. § 841(a)(1) & (b)(1)(B). The district court sentenced Mr. Jones to 262 months' imprisonment and eight years' supervised release and ordered him to pay a $100 special assessment. Mr. Jones now appeals his conviction and sentence. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

On the evening of July 28, 2000, in preparation for executing a search warrant of a residence, several Decatur Police officers were performing surveillance of that residence at 940 North Main Street in Decatur, Illinois. During that time, Detective Jason Boesdorfer observed three black males, including Mr. Jones, coming and going from the residence. At approximately 8:30 p.m., Mr. Jones and his nephew Montae Jones left the home, got into a car and drove away. Detective Lorne Sturdivant followed and observed the car, driven by Mr. Jones, make a left turn without signaling. Detective Sturdivant then ordered Mr. Jones to pull the car to the curb. Mr. Jones was arrested for driving with a suspended license and taken to the Decatur police station.

Meanwhile, other police officers, including Detectives David Dailey and Chad Ramey, began the search of 940 North Main Street. The officers first searched a dresser in the living room where they found a plastic bag containing seventeen rocks of crack. Underneath the bag of crack, they found Mr. Jones' State of Illinois identification card and pages from his address book. Next to the dresser was a duffel bag containing men's clothing, men's shaving items and a letter addressed to Mr. Jones at 423 West Olive, Decatur, Illinois, which was postmarked July 19, 2000. Underneath the dresser was a cell phone box and a receipt, dated June 27, 2000, for the cell phone made out to Mr. Jones at 423 West Olive, Decatur, Illinois.

The police also searched the northeast bedroom, which contained no furniture, only debris. In this bedroom, they found a Hardee's bag hidden in a radiator. Inside that bag

were four plastic bags; two contained cash totaling approximately $1,700; the other two contained approximately 175 rocks of crack cocaine. The crack in each bag weighed over five grams.

After the search was completed, Detective Ramey left the house and returned to the Decatur police station, where he advised Mr. Jones of his *Miranda* rights. According to Detective Ramey, Mr. Jones signed a *Miranda* form indicating that he understood his rights. Detective Ramey testified at trial that, after signing this form, Mr. Jones told him that he had moved to 940 North Main Street about a month earlier and that the duffel bag belonged to him. Mr. Jones also admitted to the Detective that he had been selling crack from the house during the previous two or three weeks and that the crack in the dresser and Hardee's bag belonged to him. He further stated that the $1,700 in the Hardee's bag was money that he had made selling crack during the previous two days.

Detective Ramey then asked Mr. Jones to draft a written confession. Mr. Jones complied and wrote:

> I've been staying at 940 Main Street for about three to four weeks and have been dealing drugs. About a couple thousand worth of the drugs were mine that were seized at that apartment in a raid (crack cocaine).

Appellee's Br. at 14-15. Mr. Jones signed the statement and wrote the date and his address as 940 North Main Street. Detective Ramey also signed the form.

According to the Government, Mr. Jones indicated to Decatur Police that he wanted to cooperate with the investigation. On August 1, 2000, he met with Decatur Police Detective Stalets and FBI Agent Warren and signed a "confidential source" form. In the following interview,

he told Detective Stalets and Agent Warren that he had received on consignment the crack that had been seized from 940 North Main Street. He further admitted that he had intended to sell it.

On March 13, 2002, a criminal complaint was issued that charged Mr. Jones with possessing crack with intent to distribute. A warrant was issued for his arrest. The criminal complaint was supported by an affidavit written by FBI Agent Warren who summarized the search of 940 North Main Street and noted that Mr. Jones had made a "written statement" confessing to dealing drugs. The text of this statement was included in the affidavit. On April 5, 2002, Mr. Jones was indicted by a grand jury and charged with knowingly and intentionally possessing with intent to distribute five or more grams of crack cocaine. *See* 21 U.S.C. § 841(a)(1) & (b)(1)(B).

## B. District Court Proceedings

Mr. Jones' trial originally was scheduled for June 10, 2002. On May 30, 2002, the district court granted his motion for a continuance; the trial date was reset for July 15, 2002. On July 3, 2002, Mr. Jones filed a second motion for a continuance, requesting additional time to obtain a handwriting analysis of the statement allegedly penned by Mr. Jones. At a hearing on this motion, Mr. Jones' counsel admitted that he had been provided the written confession by the prosecution, and had been under the mistaken impression that a police officer had written the statement and that Mr. Jones had only signed it. According to counsel, he did not realize his mistake until the final pretrial conference on June 28, 2002, when the Government had told him that Mr. Jones had written and signed, not just

signed, the statement. Given this new information, counsel contended that he needed additional time to obtain a handwriting expert to determine whether or not the document had been written by Mr. Jones.[1]

The district court denied the motion to continue, stating that a handwriting expert's testimony would not be an absolute or affirmative defense and instead would be "evidence that would be presented to the jury that they could accept or reject." R.26 at 20. The court noted that the statement allegedly written by Mr. Jones was merely corroborative of his oral statement, the testimony of the officers and the items that were seized from the home. The district court also reasoned that Mr. Jones' counsel had been made aware that his client had penned the statement on March 13, 2002, when FBI Agent Warren filed an affidavit in support of the criminal complaint stating that, on the day of the search, "Jones . . . provided a written statement to officers." *Id.* at 25, 27-28. Therefore, the district court concluded that the interests of justice did not require a continuance.

At trial, Detectives Boesdorfer, Ramey, Sturdivant and Dailey all testified about the search of 940 North Main Street. Detective Ramey further testified that Mr. Jones freely cooperated with police and that it was Mr. Jones who wrote and signed the statement given to police on July 28, 2000. Additionally, Decatur Police Detective Stalets, who was assigned to the Illinois State Police Drug Task Force, gave expert witness testimony that it was "not

---

[1] Mr. Jones' counsel indicated that he had identified the expert he wished to hire and that, once he obtained approval from the public defender's office, he would need about two weeks to obtain the expert analysis.

uncommon" for dealers to store the larger portion of cocaine in a safe location away from the smaller supply. Trial Tr.II at 404.

At the close of the prosecution's case, the Government asked the court to take judicial notice of Mr. Jones' prior conviction on February 15, 1994, for the unlawful delivery of a controlled substance in Macon County, Illinois. The district court also gave the jury a limiting instruction, based on Pattern Criminal Federal Jury Instructions for the Seventh Circuit 3.04, which instructed the jury to consider the prior conviction only for the purpose of establishing intent.[2]

Mr. Jones testified on his own behalf. He denied living at 940 North Main Street, denied making either an oral or a written statement to Detective Ramey and denied that any of the crack cocaine found in the apartment had belonged to him. He admitted that he had a 1994 conviction for selling

---

[2] The court gave the following limiting instruction to the jury at the time the prior conviction was admitted:

> Ladies and gentlemen of the jury, the [certified copy of Mr. Jones' prior conviction] provides evidence of other crimes, wrongs, or acts. It is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of intent.

> With the admission of [the conviction], you have heard evidence of acts of the defendant other than those charged in the indictment. You may consider this evidence only on the question of intent. You should consider this evidence only for this limited purpose and for no other purpose.

Trial Tr.II at 412-13.

cocaine, but testified that he had "pretty much" forgotten how to sell drugs since that conviction. Trial Tr.II at 428.

The Government then recalled Detective Stalets, who testified that Mr. Jones had indicated to him that he wanted to cooperate and had told him that he had gotten the crack seized from 940 North Main Street on consignment and intended to sell it. After closing arguments, the jury returned a verdict of guilty.

At the sentencing hearing, the district court noted that a draft of the presentence report had calculated the base offense level as 32. After an objection by Mr. Jones' counsel, the district court removed some of the relevant conduct and recalculated the offense level, lowering the base offense level to 30. Next, the district court applied, over Mr. Jones' objection, a two-level enhancement for obstruction of justice, based on the district court's finding that Mr. Jones had committed perjury when he testified in his own defense. The court, finding the offense level of 32 and a criminal history category of VI, calculated the guideline range to be between 210 and 262 months and sentenced Mr. Jones to the high end with a sentence of 262 months' imprisonment.

## II

## DISCUSSION

### A. Denial of Mr. Jones' Motion to Continue

Mr. Jones asserts that the district court abused its discretion when it denied his second motion to continue. We have recognized that, as a general rule, once a trial date has been set, the court ought to adhere to that date unless there are compelling reasons to grant a continuance. *See United States v. Farr*, 297 F.3d 651, 655 (7th Cir. 2002). Nevertheless, the

court cannot have a "myopic insistence upon expeditious-
ness in the face of a justifiable reason for delay." *United
States v. Robbins*, 197 F.3d 829, 846 (7th Cir. 1999) (quoting
*Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). In evaluating a
request for a continuance, a district court should weigh a
number of factors, including the following non-exhaustive
list:

> 1) the amount of time available for preparation; 2) the
> likelihood of prejudice from denial of the continuance;
> 3) the defendant's role in shortening the effective prep-
> aration time; 4) the degree of complexity of the case;
> 5) the availability of discovery from the prosecution;
> 6) the likelihood a continuance would satisfy the mov-
> ant's needs; and 7) the inconvenience and burden to the
> district court and its pending case load.

*United States v. Vincent*, 416 F.3d 593, 598 (7th Cir. 2005); *see
also Farr*, 297 F.3d at 655. We shall not reverse the denial of
a motion to continue unless we find an abuse of discretion
and a showing of actual prejudice to the defendant. *See
Vincent*, 416 F.3d at 598.

Upon review of the record before us, we cannot say
that the district court abused its discretion when it deter-
mined that the *Vincent* factors did not weigh in favor of a
continuance. Invoking the third factor, Mr. Jones attempts
to excuse his role in reducing his amount of preparation
time as "inadvertent" because it arose from his counsel's
reasonable misunderstanding concerning the written
statement.[3] Appellant's Br. at 21. However, the district court

---

[3] Mr. Jones' counsel was aware that Mr. Jones allegedly had
signed the written confession, but he argued at the hearing on the

(continued...)

found that Mr. Jones' counsel had been made aware as early as March 13, 2002 that Mr. Jones produced a written statement. The court took the view that it was not obliged to grant another continuance to accommodate defense counsel's tardiness in reviewing discovery materials that had been available to him. Indeed, we have held that the denial of a continuance to consult with an expert regarding government evidence was not an abuse of discretion when defense counsel had failed to review the discovery in a timely manner. *See United States v. Baum*, 435 F.2d 1197, 1202 (7th Cir. 1971).[4] Although Mr. Jones contends that the misunderstanding regarding who actually wrote the statement was inadvertent, such negligence does not excuse him from failing to review the statement in a timely manner to determine both the scrivener and the signer.

Mr. Jones also contends that the expert testimony would have aided the jury in judging the credibility of Mr. Jones and Detective Ramey. Nevertheless, the district court was entitled to conclude that such testimony

---

[3] (...continued)

motion to continue that he did not become aware that Mr. Jones also had written the text of the confession until after the final pretrial conference. It is unclear why it is more significant that Mr. Jones wrote and signed the document, rather than just signed the document.

[4] *See also United States v. Farr*, 297 F.3d 651, 655 (7th Cir. 2002) (finding no abuse of discretion in the denial of a motion to continue when defendant had gotten the Government's discovery material seventy days before trial and failed to review it); *United States v. Robbins*, 197 F.3d 829, 846 (7th Cir. 1999) (holding that the district court did not abuse its discretion when it denied a continuance to accommodate defense counsel's tardiness in reviewing discovery).

would have been of limited value in the overall presentation of his case.

Finally, Mr. Jones submits that there is no indication that a delay would have wasted judicial resources or would have "interfered with the smooth operation of the court's calendar." Appellant's Br. at 23. The district court did not make any specific statements regarding inconvenience to itself or any party; however, we have noted that this factor is simply one of many factors that the court may weigh and consider. *See United States v. Miller*, 327 F.3d 598, 605 (7th Cir. 2003). Therefore, the court did not abuse its discretion; after weighing the appropriate factors, "the trial judge chose an option that was . . . within the range of permissible options from which we would expect the trial judge to choose under the given circumstances." *United States v. Depoister*, 116 F.3d 292, 294 (7th Cir. 1997).

Furthermore, Mr. Jones has not demonstrated that he suffered any prejudice from the denial of his motion to continue. Since Mr. Jones had not yet hired the handwriting expert witness and obtained an analysis, we certainly are not assured that the handwriting expert would have testified that the statement was not written by Mr. Jones. Even if the expert had given such testimony, the evidence against Mr. Jones was overwhelming. Detective Ramey testified that Mr. Jones had confessed orally and had provided a written statement. Detective Stalet testified that Mr. Jones confessed to him that he had intended to sell the drugs. Additionally, many of the items seized from 940 North Main Street were evidence that Mr. Jones had lived at 940 North Main Street. This evidence included his Illinois identification card, men's shaving items and clothes, pages from his address book, a letter addressed to Mr. Jones and a cell phone receipt made out to Mr. Jones.

Moreover, any prejudice to Mr. Jones was minimized by his counsel's examination of Government witnesses. His counsel cross-examined Detective Ramey about Mr. Jones' statement, through which counsel established that no one else had observed Mr. Jones make the oral or written statements and that there was no video or audio recording of Mr. Jones making these statements. Also, Mr. Jones testified that he did not write the statement in question.

Mr. Jones also contends that the denial of his motion for a continuance violated his Sixth Amendment right to effective representation. However, "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (internal quotation marks omitted); *see also Vincent*, 416 F.3d at 599. Here, before deciding to deny the motion to continue, the district court considered Mr. Jones' failure to review relevant discovery, as well as possible prejudice to Mr. Jones. Based on this record, we cannot say that the district court's decision was unreasoning or arbitrary.

**B.  Admission of Mr. Jones' Prior Conviction**

Mr. Jones submits that the district court erred in admitting his 1994 conviction into evidence under Federal Rule of Evidence 404(b).[5] We review a district court's decision

---

[5]  Federal Rule of Evidence 404(b) states, in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, in-
(continued...)

to admit evidence under Rule 404(b) for an abuse of discretion; we ask whether:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Toro*, 359 F.3d 879, 884 (7th Cir. 2004) (quoting *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994)). The third prong of the test is not at issue in this appeal; we have stated that a conviction is sufficient to support a jury finding that a defendant committed a similar act. *See United States v. Best*, 250 F.3d 1084, 1092 (7th Cir. 2001).

Mr. Jones had filed a motion in limine requesting that his prior conviction not be entered into evidence. He contended that the conviction was "not relevant to proving any fact in issue other than [his] propensity to commit the crime charged," that it was too remote in time to be admissible and that any probative value would be outweighed by the prejudice that it would cause him. R.20 at 3-4. In response, the Government argued that the prior conviction was admissible to that show Mr. Jones possessed the intent to distribute the crack because possession with intent to

---

[5] (...continued)
tent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

distribute is a specific intent crime. R.22 at 2 (citing *Best*, 250 F.3d at 1091).

In assessing this issue, the district court employed the four-part test set forth above and discussed each part of that test in reaching the conclusion that the 1994 conviction was admissible. As to the first prong, the district court stated that "it is proper to admit this evidence on the issue of intent." Trial Tr.II at 319-20. Turning to the second prong, the district court held that an eight-year-old conviction is not too old to be admissible. It relied upon *United States v. Tringali*, 71 F.3d 1375, 1379 (7th Cir. 1995), which upheld the admission of a nine-year-old conviction. The district court further held that, under the fourth prong, the conviction was not more prejudicial than probative. Nevertheless, the court agreed to give a cautionary instruction to the jury.[6]

On appeal, Mr. Jones, relying on *Toro*, 359 F.3d at 883-84, submits that it would have been more appropriate to introduce the evidence if he had admitted possession but had denied the intent to distribute the drugs. Focusing on the second prong, Mr. Jones further contends that the prior conviction was too dissimilar to be admissible because it was for possession of cocaine, not crack. He also submits that the earlier conviction was too remote in time to be

---

[6] In addition to the cautionary instruction given when the evidence was admitted, the court gave the jury the following final instruction:

> You have heard evidence of acts of the defendant other than those charged in the indictment. You may consider this evidence only on the question of intent, knowledge, or absence of mistake or accident. You should consider this evidence only for this limited purpose.

R.25 at 11.

admissible. Finally, Mr. Jones argues that this evidence was more prejudicial than it was probative and that the limiting instruction was not sufficient to safeguard his right to a fair trial.

First, we must determine whether evidence of the previous conviction was relevant and probative on the issue of intent. Although we must give great deference to the district court's decision to admit the evidence, we pause to point out that our examination of the record in this case reveals that the district court's consideration of the matter does not appear to reflect the sort of critical evaluation of the issue that we believe ought to be undertaken in determining whether, in an exercise of discretion, such evidence ought to be admitted on the issue of intent. As far as we can ascertain from the cold record, in deciding the matter, the court recited the governing principles from our case law, but otherwise revealed little in the way of critical analysis as to how those principles ought to apply to the facts of this particular case.[7] This lapse well may be attributable, in part at least, to our own treatment of such matters on occasion; our cases have not always reflected a critical application of the principles reflected in the case law to the facts of the individual case. The district court also was not aided by the conclusory nature of Mr. Jones' motion in limine that simply claimed that admission of the evidence was sought simply to establish propensity to commit the charged offense.

---

[7] We hasten to add that we certainly do not expect a busy district court to write a lengthy explanation for its decision. Indeed, when the reason is obvious, there is no need to verbalize any reason. On more difficult calls, however, the record ought to reflect a "principled exercise of discretion." *United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir. 1987).

Similarly, the Government's reply added little to aid the court in its decision.

The most obvious justifiable situation in which prior convictions are admissible in drug prosecutions on the issue of intent are in those situations in which the defendant, while admitting possession of the substance, denies the intent to distribute it. *See United States v. Jones*, 389 F.3d 753, 757-58 (7th Cir. 2004), *vacated*, 125 S. Ct. 2948 (2005) (remanding for resentencing in light of *Booker*). In such a context, the matter of intent is placed squarely before the jury, and previous convictions generally are relevant and probative on the issue of intent. *See United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir. 1987). Our case law also has recognized that evidence of earlier drug trafficking convictions also can be relevant and probative when the defendant flatly contests all elements of the charge of possession with intent to distribute. *See, e.g.*, *United States v. Chavis*, 429 F.3d 662, 668 (7th Cir. 2005) (allowing the admission of 404(b) evidence after a defendant claimed he was "completely innocent" and a "clueless bystander"); *United States v. Brown*, 34 F.3d 569, 573 (7th Cir. 1994) (stating that "our own cases are clear—a defendant cannot keep 404(b) evidence out of his case by denying all charges"); *United States v. Mazzanti*, 888 F.2d 1165, 1171 (7th Cir. 1989) (holding that a blanket denial of any wrongdoing in a conspiracy to distribute drugs allows the Government to introduce prior acts to establish intent); *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir. 1989) (affirming the admission of 404(b) evidence and stating that "[i]n cases involving specific intent crimes, intent is automatically in issue"). Here too, the issue of intent must be established by the Government and evidence of prior convictions for drug trafficking may be helpful. As we pointed out in *Jones*, however, despite the general utility of this evidence to establish intent, it is

incumbent on the Government to "affirmatively show why a particular prior conviction tends to show . . . volition to commit the new crime." *Id.* at 757. *See also Chavis*, 429 F.3d at 672-73 (concurring opinion of Cudahy, J.).

The Government's argument before this court, had it been made to the district court, would have been of significant assistance to that court, as it has been to us. An examination of the record reveals that, at trial, counsel for the defendant argued to the jury that only a small amount of cocaine was near the defendant's identification card and that the remainder of the cocaine, a larger amount, was situated in another place in the house. Counsel also emphasized the presence of others at the scene at the time that the search warrant was executed. A fair reading of counsel's argument is that Mr. Jones did not control the larger amount and that the lesser amount was held for personal use rather than resale. In this context, an earlier conviction for drug trafficking was certainly relevant and probative on, among other things, the issue of Mr. Jones' intent. It evidenced his knowledge of the drug trade and the practices of drug dealers in selling their deadly wares. It also was relevant and probative with respect to the defendant's knowledge of the commercial value of even small amounts of the drug and therefore of his intent to sell the lesser amount. Accordingly, it certainly was in the sound discretion of the district court to determine, given the facts and circumstances presented by this case, that this evidence was relevant and probative on the issues placed into contention by Mr. Jones.

Next, the district court acted within its discretion in deciding that the prior conviction was close enough in time and sufficiently similar in circumstances to be relevant to the issue of intent. Mr. Jones' prior conviction occurred six years before the charged offense; the district

court correctly noted that we have allowed similar prior convictions that were even more temporally distant from the charged conduct.[8] We also have held that a prior conviction for distribution of crack is admissible in a case where the charged act involves distribution of cocaine, as the distinction between the two drugs is a *distinction without substance*" as "[b]oth crimes involve the possession with intent to distribute a chemical composition of cocaine." *United States v. Puckett*, 405 F.3d 589, 597 (7th Cir. 2005) (emphasis in original).[9]

Finally, the district court certainly did not abuse its discretion in determining that the prior conviction was not more prejudicial than probative. Any probative evidence of prior convictions will be prejudicial; however, we must determine if it was *unfairly* prejudicial. *See Best*, 250

---

[8] *See United States v. Puckett*, 405 F.3d 589, 597 (7th Cir. 2005) (holding that a conviction six years prior to charged offense is close enough in time to be relevant, and citing cases where "convictions entered as long as thirteen years prior to subsequent prosecutions . . . are admissible"); *United States v. Tringali*, 71 F.3d 1375, 1379 (7th Cir. 1995) (upholding admission of evidence concerning a 1984 conviction for conspiracy of possession with intent to distribute admissible in trial for cocaine distribution in 1994).

[9] *See United States v. Allison*, 120 F.3d 71, 74-75 (7th Cir. 1997) (holding that evidence regarding prior sales of cocaine to an undercover officer could be offered into evidence when a defendant was charged with possessing crack with intent to distribute); *see also United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996) (holding that the prior conviction for possessing over forty pounds of marijuana was similar enough to be introduced at trial for a defendant charged with possession with intent to distribute cocaine and heroin).

F.3d at 1093; *Puckett*, 405 F.3d at 598. Here, the trial court offered a limiting instruction, and we have held that such instructions "are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence." *Best*, 250 F.3d at 1093.[10] After analyzing each of the relevant factors, we cannot say that the district court abused its discretion.

## C. *Booker*

Mr. Jones was sentenced on June 3, 2004, before the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). Mr. Jones now contends that the district court's application of a two-level enhancement for obstruction of justice violated his right to a jury trial because it rested on facts found by the trial judge. Because this issue was not raised before the district court at sentencing, we review only for plain error. *See United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005) (stating that to constitute "plain error," an error must affect the defendant's "substantial rights" and "seriously affect the fairness, integrity, or public reputation of judicial proceedings").

We have held that, when a district court sentenced a defendant under the belief that the Guidelines were mandatory, a limited remand may be necessary to determine what sentence the district court would have imposed had it realized that the Guidelines were advisory. *See United States*

---

[10] *See United States v. Griffin*, 194 F.3d 808, 821 (7th Cir. 1999) (same); *see also Chavis*, 429 F.3d at 668-69 (stating that we must presume that the jurors followed the district court's limiting instruction).

*v. Johnson*, 427 F.3d 423, 429 (7th Cir. 2005); *Paladino*, 401 F.3d at 483-84.

However, a "remand is necessary only when uncertainty otherwise would leave this court in a fog about what the district judge would have done with additional discretion." *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005); *see also Johnson*, 427 F.3d at 429 (stating that a remand is only necessary "if we are in doubt" about what a district court would have done); *Paladino*, 401 F.3d at 483. Therefore, when a district court expressed at sentencing "a strong preference to give a higher sentence if [it] could do so," we can be assured that none of a defendant's substantial rights were adversely affected by the application of pre-*Booker* law. *Lee,* 399 F.3d at 867.

In this case, the district court stated that, had Mr. Jones' counsel not successfully gotten his base offense level lowered from 32 to 30, he would have faced a sentence of 327 months' imprisonment, a sentence which the court stated that Mr. Jones "richly deserve[d]." R.66 at 54. Additionally, the trial court sentenced Mr. Jones to the maximum sentence in his guidelines range, noting that "it would deprecate the seriousness of your conduct in this case and your criminal conduct through your life . . . for me to sentence you to any less than the maximum sentence. . . ." *Id.* Given the trial court's statement that Mr. Jones "richly deserve[d]" a higher sentence, we need not remand this case to permit the district court to determine how it would have sentenced Mr. Jones had the Guidelines not been mandatory.

## Conclusion

For the reasons set forth in this opinion, the judgment of the district court is affirmed.

AFFIRMED

EASTERBROOK, *Circuit Judge*, concurring.    Although I join the court's opinion, a few extra words are in order about the introduction of Jones's prior drug conviction.

Rule 404(b) provides that evidence of prior bad acts (including convictions) is inadmissible to show character or propensity but may be admissible to show intent, motive, or some other subject material to the trial. In this prosecution, as in quite a number of others we have seen in recent years, the parties and district judge alike treated the rule's second sentence as if it were a rule of admissibility. It is not; it says that evidence "may" be admissible for a given purpose, not that it is automatically admissible. Allowing the jury to learn about the defendant's criminal history, with or without a *pro forma* limiting instruction, invites the impermissible inference. Whether a conviction (or other bad act) is admissible depends not on Rule 404(b) but on whether it is relevant (Rule 402) and whether its probative value outweighs the considerable potential for prejudice (Rule 403). See, e.g., *United States v. Beasley*, 809 F.2d 1273 (7th Cir. 1987); *United States v. Seals*, 419 F.3d 600, 610-12 (7th Cir. 2005) (Posner, J., concurring); *United States v. Chavis*, 429 F.3d 662, 672-73 (7th Cir. 2005) (Cudahy, J., concurring).

Although intent always is at issue in a drug-distribution case—for a plea of not guilty puts the prosecution to its proof on every element of the offense—a conviction or other bad act may or may not be relevant to that topic. I have grave doubts about the prosecution's theory of relevance in this prosecution. Jones argued that he did not own the distribution-size cache of drugs that investigators found; he admitted only to the personal-use-size cache that was in a different location. According to the prosecutor Jones's conviction shows that he had learned to separate stocks of drugs in order to throw the hounds off the scent. Yet *how* does the conviction show this? Is it that every drug dealer knows this trick of the trade? Of that there is no evidence, and it is not something that a jury could find without proof. Is it that Jones's conviction shows that his former strategy had flopped, so he hit upon this as something new? Of that there is no evidence either; we don't know the facts underlying the 1994 conviction. Thus the prosecutor's theory boils down to a belief that a drug conviction always is relevant in any later drug prosecution, and *Beasley* disapproves that perspective.

Maybe the prosecutor could have supplied the subsidiary facts needed to make this theory of relevance fly. We will never know, because in the district court neither the litigants nor the district judge discussed this subject on the record. The defense's objection was based not on Rule 402 but on a theory that the conviction was old and therefore "stale"—as if convictions were breakfast pastries left too long in a shop's display case. That's a bad objection: if Jones's prior acts do imply something about his intent or method of operation, it is unlikely that he would have forgotten his knowledge of the drug trade during his time behind bars. Jones's counsel confused Rule 609(b), which makes the passage of time pertinent when a conviction is

used for impeachment, with Rules 402 and 403. Because the objection was off target, the judge never concentrated on what really matters to the proper use of convictions under the Rules of Evidence.

Prosecutors sometimes argue that we need not worry because district judges give limiting instructions. Most of these are formulaic, however, and of little help—and they may make things worse. Telling juries not to infer from the defendant's criminal record that someone who violated the law once is likely to do so again is like telling jurors to ignore the pink rhinoceros that just sauntered into the courtroom. Often judges just recite the language of Rule 404(b), instructing jurors that the conviction may be used "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident". Jurors are likely to hear this as so much mumbo-jumbo. The Federal Rules of Evidence speak to the bench and bar; for jurors, translation is essential.

Here the district judge avoided that pitfall by using instruction 3.04 from the *Pattern Criminal Federal Jury Instructions for the Seventh Circuit*. This pattern instruction is:

> You have heard evidence of acts of the defendant other than those charged in the indictment. You may consider this evidence only on the question of _____. You should consider this evidence only for this limited purpose.

The judge filled in the blank with "intent." That's a good start but leaves the jury at sea. *How* would a conviction show "intent"? The prosecutor's argument on appeal is that it shows not intent but knowledge of an avoidance technique (separating commercial from personal supplies). This "limiting" instruction is so general that it does not effec-

tively distinguish appropriate from inappropriate inferences. A good limiting instruction needs to be concrete so that the jury understands what it legitimately may do with the evidence.

The risk that jurors will draw the forbidden propensity inference from prior convictions makes it prudent for the court to exclude them under Rule 403 unless in opening argument the defendant's lawyer makes an argument (such as the defendant's supposed inability to recognize a white powder as cocaine) that highlights intent, knowledge, or some other appropriate use of bad acts. If the evidence is excluded during the opening presentation, and something unexpected comes up during the defense case, the prosecutor can wheel out the conviction during rebuttal; by then its relevance (or irrelevance) should be apparent. Allowing a prosecutor routinely to introduce drug convictions in the case in chief without demonstrating relevance to some concrete dispute between the litigants creates needless risk that a conviction will rest on the forbidden propensity inference.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*