**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2012
Decided August 22, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-2566

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:10-cr-30088-001-DRH |
| CORTEZ L. WOOTEN, *Defendant-Appellant.* | David R. Herndon, *Chief Judge.* |

**O R D E R**

Cortez Wooten was sitting in the passenger seat of a car driven by his girlfriend when a deputy U.S. Marshal recognized him as having an outstanding warrant for his arrest. After arresting him, officers searched Wooten, his girlfriend, and the car; they found 51.2 grams of crack cocaine, a digital scale, and $159 in small bills. Wooten asserted that he stole the scale and drugs the night before and that he intended only to smoke the crack. He was charged with possessing crack with the intent to distribute, 21 U.S.C. § 841(a)(1), and after a hung jury at his first trial, a second jury found him guilty and returned a special

verdict holding him responsible for at least 50 grams of crack. Because of the drug quantity and Wooten's prior drug convictions, the district court imposed a mandatory term of life imprisonment on the understanding that the Fair Sentencing Act of 2010, 124 Stat. 2372, was not retroactive. On appeal he argues that the FSA is applicable and would have reduced his sentence, that the evidence presented at trial was insufficient for a rational jury to find him guilty, and that the district court erred in admitting evidence of his prior conviction for distributing crack in 1998. We affirm Wooten's conviction, but in light of *Dorsey v. United States*, 132 S. Ct. 2321 (2012), we vacate his sentence and remand for resentencing.

At trial both sides framed the primary issue as whether Wooten intended to distribute the drugs found in his pocket. The prosecution emphasized that a common-sense evaluation of the evidence found on Wooten, his videotaped interrogation, and testimony from his former cellmate would lead the jury to find him guilty. Wooten's attorney then set out the defense's primary theme at trial: that he was an addict who stole the drugs and intended only to consume them, and that the government could not adequately prove otherwise. In their opening statements neither side mentioned Wooten's prior conviction.

The government called two of the arresting officers, Deputy U.S. Marshal Dave Davis and police officer Keith Howard, who were working together as part of a task force. Davis and Howard testified that they were parked in their squad car in East St. Louis when Davis saw Wooten riding in the passenger seat of a passing car. Davis recognized Wooten from an investigation that led to Wooten's prior drug arrest in 1998 and knew that an arrest warrant was outstanding for Wooten. They followed the car until the driver parked; Howard then approached the vehicle to make the arrest. As he approached the car, Howard could see money fanned across Wooten's lap. While Howard put him in handcuffs, Wooten said, "I've got dope on me." He did not appear to be under the influence of drugs. Howard testified that he searched Wooten and found in his pockets the digital scale and the lump of crack weighing 51.2 grams, along with $159 in small bills on his lap. The officers also testified that a search of Wooten's girlfriend and the car revealed no further evidence; they did not find a crack pipe, lighter, or other drug paraphenalia. There was a bit of uncertainty about the girlfriend's purse: Davis testified that it had been searched, though Howard did not recall seeing a purse.

Howard then took Wooten to the Illinois State Police headquarters in Collinsville, Illinois, for questioning, where they were joined by Officer Dave Kitley. An audio and video recording of this interview was introduced at trial. Wooten first asserted that he stole the drugs and scale from an unlocked car the night before, that he was addicted to crack, and that he intended to smoke the drugs. When pressed, however, Wooten reluctantly told the officers that he was unemployed, that he needed money, and that he had been willing to sell some of the crack. When Officer Kitley said, "You just told me you were trying to get some

money for your kids. For her kids right?" Wooten responded, "Okay, bro, I smoke crack, I try to hustle." When Officer Howard asked, "Were you going to pinch a little for yourself and then try and make some money?" Wooten replied, "Bro, I'm gonna take it however it come. . . . I mean I am gonna smoke some, I'm gonna make some money, however I gotta do it, bro." Wooten emphasized this point: "[L]ike I told you, I get high. I ain't just saying I'm just gonna go out here and hustle some shit, bro. . . . I'm gonna take care of my habit first, bro, and if there's some money to be made, I'm gonna make some, bro."

DEA special agent Mike Rehg provided expert testimony regarding crack use and distribution in East St. Louis. Agent Rehg testified that the quantity of crack found on Wooten could have brought him $1,800 to $5,100 depending on the manner of sale, and that this quantity is more commonly found on dealers than on addicts: A typical addict might consume about one gram a day, so 51.2 grams could last an ordinary user several weeks. He also testified that users typically have drug paraphernalia with them, as crack cannot be ingested without a pipe and a heat source. Dealers, in contrast, usually have access to a scale, and because the drug is commonly sold in small doses of .1 or .2 gram costing $10 or $20, dealers also will carry currency in small bills.

The government also introduced evidence concerning Wooten's conviction for distributing crack in 1998. Deputy Marshal Davis testified that he participated in the drug investigation into Wooten in 1998. Davis did not discuss the details of that investigation, however, as defense counsel successfully argued that allowing Davis to discuss the investigation in detail would be cumulative of testimony that the government planned to elicit later in the trial. Those details came out later when, following a limiting instruction cautioning the jury that it could consider Wooten's conviction only as proof of intent or motive, former police officer Jason Bridges testified that in 1998 he participated in a drug investigation into Wooten and twice watched him sell about 3 grams of crack to an informant. The prosecution then introduced a certified copy of Wooten's conviction. His former probation officer also testified concerning that past conviction, and said among other things that Wooten's supervised release was revoked after he tested positive for marijuana several times, that he was diagnosed by a drug treatment center as being "dependent" on marijuana, and that he confided to her that he never used crack. Wooten never objected to Bridges's or his probation officer's testimony, or to the introduction of the conviction record.

Finally, the government presented testimony from Wooten's former cellmate at the Fayette County jail, Marzell Travis, who admitted that he was cooperating in order to receive a reduced sentence. Travis, who did not testify at Wooten's first trial, explained that in November 2010 he came forward with information about Wooten because he was dissatisfied with his sentence. Travis said that, before he approached the authorities, Wooten had confessed in a jailhouse conversation that he bought the crack the day before

his arrest and was on his way to sell it when he was caught. Travis also testified that in jail he and Wooten had smoked marijuana that Wooten smuggled in through a straw wedged into a hole in the visitor's-room window.

As promised in his opening statement, defense counsel cross-examined the government's witnesses and called three witnesses of his own in trying to paint Wooten as a crack addict who stole the drugs solely for his own personal consumption. Wooten did not testify. To impeach Marzell Travis's testimony, he called the administrator of the Fayette County jail to testify that it would have been impossible for someone to have smuggled marijuana into the jail through the visitor's-room window and that no one ever had been caught with marijuana in the jail. Carolyn Lott, the mother of Wooten's two children, testified that she and Wooten had smoked crack together several times when they were dating in the early 1990s, though she had spoken to him only once since 1995. Finally, Wooten's sister testified that she knew he smoked marijuana and suspected, but could not be certain, that he also had started smoking crack.

The jury returned a verdict of guilty and a special verdict finding that Wooten intended to distribute 50 or more grams of crack. At sentencing in July 2011, the district court concluded that Wooten's prior felony drug convictions made him a career offender under U.S.S.G. § 4B1.1. Accordingly, the court calculated a total offense level of 37 and a criminal-history category of VI, which equated to a guidelines imprisonment range of 360 months to life. Over Wooten's objection, however, the court concluded that the FSA did not apply because his offense had been committed before that legislation was enacted in August 2010. Accordingly, due to his prior convictions, the court concluded that § 841(b)(1)(A) mandated life imprisonment.

On appeal, Wooten challenges the sufficiency of the evidence presented by the government to prove that he intended to distribute crack. In particular, he argues that his videotaped interrogation fails to establish his intent to distribute, he faults the thoroughness of the government's search of the car and its driver, he argues that his former cellmate is not a credible witness, and he notes that there was conflicting evidence concerning his addiction to crack.

Wooten's claim is not persuasive. This court will reverse only if no rational jury could have found, based on the evidence presented at trial and viewed in the light most favorable to the government, that Wooten was guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Walker*, 673 F.3d 649, 654 (7th Cir. 2012). Here, the government needed to prove that Wooten knowingly possessed crack, that he knew it was a controlled substance, and that he intended to distribute the drug. 21 U.S.C. § 841(a)(1); *United States v. Lane*, 591 F.3d 921, 926 (7th Cir. 2010). As both parties

acknowledge, however, the only issue contested at trial was Wooten's intent to distribute. Wooten's sufficiency challenge boils down to attacks on the reasonableness of inferences drawn by the jury, and to questions concerning the credibility of witnesses—both of which this court is loath to disturb. *See United States v. Stevenson*, 680 F.3d 854, 857 (7th Cir. 2012); *United States v. Carraway*, 612 F.3d 642, 645 (7th Cir. 2010). Essentially, he asks this court to reject the common-sense version of events championed by the government and found by the jury and instead infer that he is a crack addict who was carrying around more than 50 grams of crack strictly for personal use. Yet a rational jury could have concluded otherwise from the trial evidence. The government established that Wooten possessed more crack than a typical user would consume in several weeks, that he was carrying a scale and small bills, and that the task-force officers found none of the paraphernalia necessary to consume the drug. An expert on crack trafficking testified that Wooten's collection of possessions was typical of persons distributing crack. The jury heard testimony from his former cellmate, who testified that Wooten confided in him that he intended to sell the drugs, and the government introduced evidence that Wooten was previously convicted of selling crack. The jury also viewed a video recording in which Wooten told police that he was unemployed, that he needed money, and that "I'm gonna take care of my habit first, bro, and if there's some money to be made, I'm gonna make some." Based on this evidence a jury could easily find beyond a reasonable doubt that Wooten intended to distribute the drugs. *See, e.g., United States v. Huddleston*, 593 F.3d 596, 601–02 (7th Cir. 2010).

Additionally, Wooten argues for the first time on appeal that the district court erred in admitting evidence of his prior conviction for distributing crack under Federal Rule of Evidence 404(b). Wooten focuses exclusively on the prejudice stemming from this evidence.

Because Wooten never sought to exclude evidence of his drug conviction under Rule 404(b), there is an initial question concerning whether he waived the point instead of merely forfeiting it. But regardless whether the failure to object was intentional, the government argues in its brief only that Wooten has forfeited this challenge, not waived it entirely. Thus the government has waived its waiver defense, and we will review Wooten's argument under the plain-error standard. *See United States v. Burge*, 683 F.3d 829, 833 (7th Cir. 2012). Consequently, to prevail on appeal Wooten must show first that the district court erred, that the error was plain, and that it affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 731–35 (1993).

Rule 404(b) allows trial judges to admit evidence of prior crimes for purposes other than to show propensity, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b). To determine if evidence of prior misconduct is admissible, the judge should consider whether (1) that evidence "is directed toward establishing a matter in issue other than the

defendant's propensity to commit the crime charged," (2) the other act is "similar enough and close enough in time to be relevant to the matter at issue," (3) the evidence supports a jury's finding that the defendant committed the prior act, and (4) the danger of unfair prejudice substantially outweighs the probative value of the evidence. FED. R. EVID. 403, 404(b); *United States v. Vargas*, __ F.3d __, 2012 WL 3240678, at *7 (7th Cir. August 10, 2012); *United States v. Baker*, 655 F.3d 677, 681–82 (7th Cir. 2011); *United States v. Jones*, 455 F.3d 800, 806–07 (7th Cir. 2006).

The district court did not plainly err in admitting evidence of Wooten's conviction for distributing crack in 1998. His prior conviction was relevant to the primary question at his trial—whether he intended to sell or consume the crack in his possession. *See, e.g., Baker*, 655 F.3d at 682; *United States v. Powell*, 652 F.3d 702, 706–07 (7th Cir. 2011); *United States v. Boling*, 648 F.3d 474, 479 (7th Cir. 2011); *United States v. Perkins*, 548 F.3d 510, 514–15 (7th Cir. 2008); *United States v. Hurn*, 496 F.3d 784, 787–88 (7th Cir. 2007); *Jones*, 455 F.3d at 808. Wooten contends only that the risk of unfair prejudice substantially outweighs any probative value of the evidence, and that the jury must have drawn the prohibited "once a drug dealer, always a drug dealer" inference. *See United States v. Miller*, 673 F.3d 688, 698-700 (7th Cir. 2012). But we are unconvinced that this evidence was so prejudicial as to call its admission plain error. The district court instructed the jury during the prosecution's case-in-chief and in the jury instructions that it could only consider Wooten's prior conviction for its value in determining Wooten's intent or motive in possessing the crack. These limiting instructions minimized any prejudice to Wooten. *See United States v. Chambers*, 642 F.3d 588, 595–96 (7th Cir. 2011); *Jones*, 455 F.3d at 809.

Finally, Wooten argues that the district court erred in concluding that he cannot benefit from the lower mandatory minimums established by the FSA. He is correct, as the government conceded at argument. At the time of his sentencing in July 2011, this court had concluded that the FSA did not apply to preenactment crimes. In *Dorsey v. United States*, however, the Supreme Court held that the FSA applies to all persons sentenced after its enactment by Congress, without regard to when the conduct occurred. 132 S. Ct. 2321, 2335 (2012). Wooten raised this issue in the district court and in his opening brief, and he thus is entitled to be resentenced. On remand he will face a statutory minimum of 10 years, 21 U.S.C. § 841(b)(1)(B) (2006 & Supp. IV 2011), and still will be subject to a guidelines range of 360 months to life as a career offender, *see* U.S.S.G. § 4B1.1(b)(1).

For the foregoing reasons, we **AFFIRM** Wooten's conviction but **VACATE** his sentence and **REMAND** this case to the district court so that it may apply the lower mandatory minimum provided by the Fair Sentencing Act.